UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | |
|---|---|
| ROBERT DE LA GARZA, JR, § | |
| § | |
| Plaintiff, § | |
| VS. § | CIVIL ACTION NO. 6:11-CV-37 |
| § | |
| KIRBY BRUMBY, § | |
| § | |
| Defendant. § | |

## **MEMORANDUM AND ORDER**

"To the victor belong the spoils" was long the refrain of successful political candidates in this country.[1]  Once in office, they could hire their supporters and fire their opponents.  But beginning in the late nineteenth century and culminating during the Progressive Era, civil service reform placed legislative limits on patronage hiring in some jurisdictions.  *See Elrod v. Burns*, 427 U.S. 347, 353–54 (1976) (chronicling the history of patronage hiring in American politics).

Then, more than three decades ago, the Supreme Court began interpreting the First Amendment to place constitutional limits on patronage practices for employees not performing policymaking or confidential duties.  *See id.* at 374–75 (Stewart, J., concurring) (finding unconstitutional the position that a "nonpolicymaking, nonconfidential government employee can be discharged or

---

[1] Senator William Learned Marcy of New York is credited with first using this term during an 1832 Senate debate concerning future President Martin Van Buren, whom President Andrew Jackson had nominated to be minister to England.

threatened with discharge from a job that he is satisfactorily performing upon the sole ground of his political beliefs"). Yet despite the development of a robust body of law in this area, this case presents a scenario that the parties and Court could not find in any published cases: a successful political candidate refusing to hire the incumbent he defeated when the losing candidate later applied for a subordinate position.[2]

The question before the Court is whether summary judgment is warranted in this novel case.

## I. BACKGROUND

The 2008 election for Sheriff in Goliad County, Texas led to this case. Defendant Kirby Brumby, then an elected constable, challenged Plaintiff Robert De La Garza, who had served as Sheriff since 2001. Brumby campaigned on the platform that he would restore "honesty, integrity, ethics, and fairness" to the Sheriff's Office. Docket Entry No. 22 at 3. Brumby won and took office in January 2009.

---

[2] There are First Amendment retaliation cases in which a current employee of a government office ran against his elected boss. Political rivalry must be endemic to sheriff's offices because those cases also involve races for sheriff. *Compare Click v. Copeland*, 970 F.2d 106 (5th Cir. 1992) (reversing directed verdict for defendant on both constitutional claim and qualified immunity in case brought by two deputy sheriffs who were demoted when they announced their candidacy for Bexar County Sheriff), *with Wilbur v. Mahan*, 3 F.3d 214 (7th Cir. 1993) (granting summary judgment in case brought by deputy sheriff who was placed on unpaid leave after announcing his campaign against the sheriff).

De La Garza wanted to stay in law enforcement. So in July 2009, he submitted an application to be a School Resource Officer for Goliad Independent School District. The officer's duties "include traffic control services, law enforcement, and assisting school administration with security during regular school hours." Docket Entry No. 22-1 at 4. Pursuant to an agreement between the County and School District, the School Resource Officer is "under the supervision of the Sheriff," dresses and carries the same equipment as Sheriff's deputies, and is commissioned as a "regular-duty peace officer employed and properly trained by the County." *Id.* at 4–5. Both the School District and Sheriff have a role in selecting the school officer. *See id.* (noting that the hire is "subject to the approval of the Superintendent and the campus Principal").

A number of candidates applied for the School Resource Office position; the Superintendent and school board trustees interviewed fewer than five of them. After this interview process, at a September 30, 2009 meeting, Goliad ISD trustees voted to submit the names of De La Garza and one other individual to the Sheriff. Within a matter of days, the other candidate withdrew, leaving De La Garza as the only candidate referred by the trustees.

On October 7, Brumby notified the Superintendent that "the current method of selecting qualified potential SRO candidates has not produced a field of candidates by which the Sheriff's Office has an opportunity to choose the

candidate that is best suited to the position in Goliad." Docket Entry No. 26-1 at 21. He further instructed that he would "widen[] the search" and "present to the School Board those candidates which I would be willing to carry their commissions based upon their level of qualifications, moral character, attitude, and willingness to be an integral part of our endeavor . . . ." *Id.* Brumby, however, never followed through by referring any applicants to the School District.

Around this time, the exact date is not known, Brumby had a telephone conversation with Goliad ISD trustee Robert Mollicone. According to a declaration Mollicone submitted in this case, Brumby told him he did not want to hire De La Garza because "I like my job and don't want to give anyone a base of operations to run against me."[3] *Id.* at 24.

In 2011, De La Garza filed this lawsuit against Brumby in both his individual and official capacity. The complaint asserts a section 1983 claim for First Amendment violations. Brumby filed his motion for summary judgment, arguing that the evidence does not establish a First Amendment violation and that, with respect to the claim brought against him in his individual capacity, qualified immunity provides a further defense.

## II.    STANDARD OF REVIEW

---

[3] Mollicone acknowledges in his affidavit that he discussed other matters with Brumby in that conversation, but does not describe those matters. Docket Entry No. 26-1 at 24.

When a party moves for summary judgment, the reviewing court shall grant the motion "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts on questions of fact must be resolved in favor of the party opposing summary judgment. *See Evans v. City of Houston*, 246 F.3d 344, 348 (5th Cir. 2001) (citation omitted). "Summary judgment should be used 'most sparingly in . . . First Amendment case[s] . . . involving delicate constitutional rights, complex fact situations, disputed testimony, and questionable credibilities.'" *Benningfield v. City of Houston*, 157 F.3d 369, 377 (5th Cir. 1998) (alterations in original) (quoting *Porter v. Califano*, 592 F.2d 770, 778 (5th Cir. 1979)).

## III. FIRST AMENDMENT CLAIM

### A. Elements

Claims alleging retaliation based on a public employee's political beliefs or activities implicate two lines of First Amendment cases. *See Gomez v. City of Eagle Pass*, 91 F. Supp. 2d 1000, 1008 (W.D. Tex. 2000). The first is the *Pickering* line of "public employee speech" cases, which balances an employee's right to comment on matters of public importance against the government's interest

in maintaining an efficient and orderly workplace. *See Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968); *Connick v. Myers*, 461 U.S. 138, 142 (1983). The second is the *Elrod* line of political patronage cases, which takes a more categorical approach in holding that the "First Amendment prohibits so-called 'patronage' dismissals of most low-level employees, but permits such dismissals for policymakers, those for whose positions the employer can establish that 'party affiliation is an appropriate requirement for the effective performance of the public office involved.'" *McEvoy v. Spencer*, 124 F.3d 92, 98 (2d Cir. 1997) (quoting *Branti v. Finkel*, 445 U.S. 507, 518 (1980)).

Some circuits, such as the First, Second, and Seventh, treat these as distinct doctrines and would likely fit De La Garza's case under the *Elrod* line. *See id.* at 99 n.4 (listing the circuit split in cases involving "an employee [] discharged by his public employer because he actively campaigned for or spoke out on behalf of the employer's electoral opponent, [in which] courts have struggled with the question of whether the *Pickering* or *Elrod* test is applicable"). But the Fifth Circuit, along with the Eleventh, treats cases in which the public employee engages in campaign activity as "public concern" speech cases subject to the *Pickering* balancing test. *See McBee v. Jim Hogg County*, 730 F.2d 1009, 1014–15 (5th Cir. 1984) (en banc); *accord Stough v. Gallagher*, 967 F.2d 1523, 1527 (11th Cir. 1992). The Fifth Circuit's treatment is consistent with *Pickering*'s lineage, which is rooted in

political association "cases arising from the widespread efforts in the 1950s and early 1960s to require public employees, particularly teachers, to swear oaths of loyalty to the state and reveal the groups with which they associated." *Connick*, 461 U.S. at 144. And the parties in this case agree that *McBee* applies and compels evaluation of this case under what Brumby describes as the "*McBee-Pickering-Connick* balancing test." Docket Entry No. 22 at 15.

That balancing test is the most cited of what are actually four elements a plaintiff must prove to prevail on a First Amendment retaliation claim. He must show (1) that he suffered an adverse employment decision; (2) that he engaged in speech or associational activity involving a matter of public concern; (3) under the balancing test, the interest in "commenting on matters of public concern . . . outweigh[ed] the Defendant's interest in promoting efficiency"; and (4) the speech or associational activity "motivated the adverse employment decision." *Beattie v. Madison Cnty. Sch. Dist.*, 254 F.3d 595, 601 (5th Cir. 2001) (ellipsis in original) (quoting *Harris v. Victoria Indep. Sch. Dist.*, 168 F.3d 216, 220 (5th Cir. 1999)). If the Plaintiff establishes that the First Amendment activity was a motivating factor in the employment decision, the defendant can then establish the affirmative defense that it "would have come to the same conclusion in the absence of the protected conduct." *Id.* (quoting *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Brumby does not contest the first two elements in his summary judgment motion, but he vigorously disputes the rest. He contends that his interest in operating an effective Sheriff's Office outweighed the First Amendment interest in De La Garza's political activity; that De La Garza's First Amendment activity was not a motivating factor in the decision not to hire him; and that even if it was a factor, Brumby would have made the same hiring decision even if De La Garza were not a political opponent.

B.   *Pickering* **Balancing Test**

Brumby's first argument for dismissal is that De La Garza cannot prevail under the *Pickering* balancing test. As refined by subsequent Supreme Court and Fifth Circuit decisions, the Pickering test is a "sliding scale under which 'public concern' is weighed against disruption: 'a stronger showing of disruption may be necessary if the employee's speech more substantially involves matters of public concern.'" *Matherne v. Wilson*, 851 F.2d 752, 761 (5th Cir. 1988) (quoting *Gonzalez v. Benavides*, 774 F.2d 1295, 1302 (5th Cir. 1985)). Among the factors to consider are the following:

> (1) the degree to which the employee's activity involved a matter of public concern; (2) the time, place, and manner of the employee's activity; (3) whether close working relationships are essential to fulfilling the employee's public responsibilities and the potential effect of the employee's activity on those relationships; (4) whether the employee's activity may be characterized as hostile, abusive, or insubordinate; (5) whether the activity impairs discipline by superiors or harmony among coworkers.

*Brady v. Fort Bend County*, 145 F.3d 691, 707 (5th. Cir. 1998) (citing *Click v. Copeland*, 970 F.2d 106, 112 (5th Cir. 1992)).[4]

Every one of those factors depends on the consequences of the employee's "activity," that is, his First Amendment activity which gives rise to the balancing of interests. In this case, the First Amendment activity is De La Garza's "past and reasonably expected future political speech and political affiliation—his 2008 campaign for reelection, in which Sheriff Brumby opposed and defeated him, and his potential candidacy in 2012." Docket Entry No. 1 ¶ 21. This required connection between the disruption the government must demonstrate and the employee's First Amendment conduct dooms Brumby's argument on this element because the bulk of the horribles Brumby attributes to De La Garza do not stem from the possibility that he would run for Sheriff while serving as the School Resource Officer.[5]

---

[4] Many of these factors seem ill-suited to a refusal to hire case such as this one, because a historical record demonstrating the consequences of the speech will not exist as it does in the more common firing cases. Nonetheless, courts have consistently applied the balancing test to hiring cases, *see, e.g.*, *Worrell v. Henry*, 219 F.3d 1197, 1207 (10th Cir. 2000); *Shahar v. Bowers*, 114 F.3d 1097, 1102–03 (11th Cir. 1997) (en banc); *Hubbard v. EPA*, 949 F.2d 453, 460 (D.C. Cir. 1991), and, as noted above, *Pickering* actually has its origins in refusal-to-hire cases. *See supra* page 6.

[5] While the vast majority of Brumby's arguments on the balancing test focus on De La Garza's general character and competence unrelated to his political history and potential future candidacy, Brumby does briefly argue that his political rivalry with Brumby would impair the "close working relationship" between the Sheriff and School Resource Office and could cause "the working environment to be hostile and subordinate." Docket Entry No. 22, at 10–11, 16. Most of these statements are unsupported, however, and the description of the School Resource Officer's duties that does exist in the record—that the officer "would spend virtually all of

Brumby recites a litany of character and competency deficits that he alleges De La Garza possesses: "He lacked good judgment, honesty, professionalism, an ability to apply the laws fairly and equally to everybody, and the ability to work as [a] team with other law enforcement agencies."  Docket Entry No. 22 at 31.  Brumby acknowledges, however, that this characterization "has nothing to do with political association."  *Id.*  In other words, even if De La Garza disavowed any future political activity, Brumby would still have viewed De La Garza as a terrible candidate for School Resource Officer.

But under the *Pickering* balancing inquiry, it is the associational or speech activity that must give rise to the workplace disruption.  "As the Supreme Court has made clear, [], the relevant issue is not the weight of the governmental interest considered in abstract terms; we look instead to how the speech at issue *affects* the government's interest in providing services efficiently."  *Kinney v. Weaver*, 367 F.3d 337, 362 (5th Cir. 2004) (en banc) (emphasis in original).  The government has thus prevailed under the balancing test when courts concluded that a hospital worker wearing political pins on his uniform would disrupt hospital tranquility and subject captive patients to controversial messages, *see Commc'ns Workers of Am. v. Ector Cnty. Hosp. Dist.,* 467 F.3d 427, 441 (5th Cir. 2006) (en banc), when a

---

his/her time patrolling GISD campuses," Docket Entry No. 22 at 18 (citing Exs. 1 and 2)—presents a situation vastly different from the typical "close working relationship" in *Pickering* cases when the parties work at the same premises and interact on a regular basis.  The isolation of the School Resource Officer from other Sheriff's Office employees also belies the notion that having a political opponent in the position would cause other deputies to be disruptive.

superintendent's political opposition to newly elected school board members would hinder the close working relationship he needed with the board, *see Kinsey v. Salado Indep. Sch. Dist.*, 950 F.2d 988, 996 (5th Cir. 1992) (en banc),[6] and when a police officer making comments to the media while posing as an official department spokesperson would bring the professionalism of the department into disrepute, *see Nixon v. City of Houston*, 511 F.3d 494, 499 (5th Cir. 2007). But in a case such as this one, in which the government argues the plaintiff "was *not* fired because of [his] political activities," there is little basis for concluding that De La Garza's possible future political activities would cause disruptions substantial enough to outweigh First Amendment interests. *Jordan v. Ector County*, 516 F.3d 290, 299 (5th Cir. 2008) (emphasis in original) ("We need not pause long on the balancing, for there is no record evidence that Jordan's political activities caused disruptions that would justify termination . . . . The purported incidents leading to Jordan's termination bore no relation to any of Jordan's political activities . . . .").

Of course, lack of character, incompetence, and general good-for-nothingness are all valid reasons not to hire someone, especially for a law enforcement position focused on protecting children. Such defects—if true—are

---

[6] The *Kinsey* ruling stemmed from findings that superintendent is a high-level decisionmaking position that requires a close working relationship with the school board. As discussed *supra* note 6, the evidence does not demonstrate that the School Resource Officer and Sheriff would have a close working relationship. Nor is there any indication that the School Resource Officer position involves significant policymaking. Brumby provides no evidence concerning the duties of, or his interaction with, the person who eventually filled the School Resource Officer position.

legitimate reasons not to hire someone whether he is a political supporter, opponent, or agnostic. But if, as in this case, the problems do not stem from the First Amendment activity, then the *Pickering* balancing test is not the legal framework in which to consider these arguments. Instead, the defendant can argue that he had legitimate, nonspeech-related reasons for the employment decision. It is that factor to which the Court now turns.

### C. Motivating Factor

Brumby's argument that De La Garza was not hired because of his alleged ineptitude is properly considered in evaluating whether De La Garza can show that his First Amendment activity was a substantial or motivating factor in Brumby's decision not to hire him after he was the sole remaining candidate referred by the trustees. But Brumby faces a different problem with this element. Unlike the *Pickering* balancing test, which is an issue of law for the Court to decide, *see Branton v. City of Dallas*, 272 F.3d 730, 739 (5th Cir. 2001) (citing *Connick*, 461 U.S. at 147–48, n.7), it "is for a jury to resolve . . . whether plaintiff's protected speech was a substantial or motivating factor in the adverse employment decision." *Id*.

Brumby notes that despite the general rule that causation in First Amendment retaliation cases is a jury question, some Fifth Circuit cases have found summary judgment warranted on this element. *See, e.g.*, *Beattie*, 254 F.3d at

605; *Gerhart v. Hayes*, 217 F.3d 320, 322 (5th Cir. 2000). But in none of those cases did the plaintiff have the direct evidence of retaliatory motive that De La Garza can point to in the form of trustee Mollicone's testimony that Brumby stated he did not want to hire De La Garza because "I like my job and don't want to give anyone a base of operations to run against me." Docket Entry No. 26-1 at 24. In *Gerhart*, the only causation evidence the plaintiff offered was the decisionmaker's mere knowledge of the speech. *See* 217 F.3d at 322 (noting the plaintiff "has offered no other evidence that would establish that the motive behind [the] decision to terminate her was to retaliate for her having spoken out on this issue"). In *Beattie*, the plaintiff could not even show that the school board members who terminated her had knowledge of her speech; her reliance on "[t]iming alone" was held insufficient to create a fact issue on whether retaliation motivated her firing. *See Beattie*, 254 F.3d at 605.

Brumby has more. In the context of First Amendment retaliation cases, Mollicone's testimony amounts to a smoldering, if not smoking, gun on the causation issue. *See Brady*, 145 F.3d at 713 (affirming jury verdict for plaintiff on causation element based in part on testimony recounting sheriff's comments that he did not rehire a deputy because he "was backing the wrong man" and "had bet on the wrong horse and lost"). Perhaps recognizing this, at a hearing on this motion, Brumby's counsel resorted to arguing that De La Garza's evidentiary nugget

comes from just one source, for whom credibility issues may exist, whereas in this lawsuit Brumby has detailed numerous nonspeech reasons for rejecting De La Garza. But such weighing of the evidence and credibility determinations are for the jury. Because there are no Fifth Circuit cases authorizing a court to override direct evidence of retaliatory motive and grant summary judgment—and such a ruling would be contrary to the fundamental division of labor between judge and jury—a disputed fact issue exists on the causation element in this case.

### D. Affirmative Defense

But Brumby has one other area where he can press his allegations about his predecessor's ineptitude. If a jury concludes that De La Garza's political activity was a motivating factor in the refusal to hire him, Brumby can still prevail if he establishes that he would have rejected De La Garza regardless of their political rivalry. *Gerhart*, 217 F.3d at 321 (citing *Mt. Healthy*, 429 U.S. at 274). Yet because this is another factbound causation issue, *see Brady*, 145 F.3d at 712–15 (considering both the "motivating factor" and "*Mt. Healthy* defense" under a section analyzing the "Jury's Finding on Causation"), Brumby faces another uphill climb at the summary judgment stage. Even more so because this is an affirmative defense on which he has the burden. *See Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (stating that when "the movant bears the burden of proof on

an issue . . . he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor" (emphasis in original)).

Indeed, none of the Fifth Circuit cases finding summary judgment proper on a *Mt. Healthy* defense involved the direct evidence De La Garza has. In two of the cases there was not even evidence that the decisionmaker knew about the plaintiff's speech, *see Beattie*, 254 F.3d at 605; *see also James v. City of Houston*, 48 F. App'x 916, 2002 WL 31114951, at *4 (5th Cir. Sept. 12, 2002), and in another the mere knowledge of plaintiff's speech was the only evidence indicating that the speech played any role in the termination, *see Gerhart*, 217 F.3d at 322. The Fifth Circuit also found the *Mt. Healthy* defense established as a matter of law when a plaintiff had "no direct evidence [of] a retaliatory motive," "failed to present a chronology of events that would allow reasonable jurors to draw an inference of retaliation," and could not show retaliatory motive because the "protected speech did not adversely affect" the defendant in any conceivable manner. *Brady v. Houston Indep. Sch. Dist.*, 113 F.3d 1419, 1424–25 (5th Cir. 1997). De La Garza, in contrast, possesses evidence in all three of those categories.

The viability of the *Mt. Healthy* defense comes down to the following question: was the contemporaneous comment Brumby made to the trustee a full explanation of why he rejected De La Garza, or is Brumby's current list of reasons

15 / 19

for not hiring De La Garza the reason? The answer is a credibility-based determination for the jury. Because there is evidence from which a jury could conclude that Brumby would have accepted the trustee's referral of De La Garza for the position had he not been a political rival, summary judgment dismissing the First Amendment retaliation claim is not warranted.

## IV. QUALIFIED IMMUNITY

The above analysis demonstrating that a jury question exists on De La Garza's First Amendment claim warrants denial of the summary judgment motion with respect to the claim brought against Brumby in his official capacity, which is essentially a claim against the Sheriff's Office. *See Hafer v. Melo*, 502 U.S. 21, 26 (1991) ("[A]n official-capacity suit against a state officer is not a suit against the official but rather is a suit against the official's office. As such it is no different from a suit against the State itself." (internal quotation marks and citation omitted)). But the claim against Brumby in his individual capacity raises an additional question. Even if a jury could conclude that a constitutional violation occurred, Brumby can assert qualified immunity.

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v.*

*Fitzgerald*, 457 U.S. 800, 818 (1982)).  An official's acts violate clearly established law if "at the time of the challenged conduct, 'the contours of a right are sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" *Ashcroft v. Al-Kidd*, 131 S. Ct. 2074, 2083 (2011) (brackets omitted) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).  The burden is on the plaintiff in each case to demonstrate that the defense is inapplicable. *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc) (per curiam).

The Supreme Court has counseled that "clearly established law" should not be defined "at a high level of generality." *Al-Kidd*, 131 S. Ct. at 2084 (citation omitted).  An issue does "not require a case directly on point" to be clearly established, "but existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* at 2083 (citations omitted).  In the absence of controlling authority, an issue should only be considered clearly established if it is supported by a "robust 'consensus of cases of persuasive authority.'" *Id.* at 2084 (quoting *Wilson v. Layne*, 526 U.S. 603, 617 (1999)).

Public employee speech cases involve "a case-specific balancing of the employee's First Amendment rights and the government's interest in maintaining discipline and efficiency in the work place." *Gunaca v. Texas*, 65 F.3d 467, 474 (5th Cir. 1995) (citing *Noyola v. Tex. Dep't of Human Res.*, 846 F.2d 1021, 1025

(5th Cir. 1988)). Accordingly, "[t]here will rarely be a basis for *a priori* judgment that the termination or discipline of a public employee violated 'clearly established' constitutional rights." *Noyola*, 846 F.2d at 1025. The Fifth Circuit has thus held that public officials facing First Amendment retaliation lawsuits are often entitled to qualified immunity "because reasonable government officials, knowing only that they must not infringe on employee free speech rights, would not necessarily know just what conduct was prohibited." *Gunaca*, 65 F.3d at 474 (quoting *Noyola*, 846 F.2d at 1025) (internal punctuation marks omitted).

As stated at the outset, this case is factually unique. The parties agree that "there is no reported First Amendment case where the plaintiff was the former office holder who was defeated and then applied for employment with the person who defeated him." Docket Entry No. 22 at 12. There is certainly no controlling authority or robust consensus of persuasive authority clearly establishing liability in this scenario. Accordingly, the level of specificity in the case law needed to put Brumby on notice that his conduct violated the law and could result in personal liability—an already high threshold that the Fifth Circuit indicates is especially difficult to overcome in *Pickering* cases—is lacking. Brumby therefore is entitled to qualified immunity.

## V. CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment (Docket Entry No. 22) is **GRANTED IN PART** and **DENIED IN PART**. Qualified immunity requires dismissal of the claim brought against Brumby in his individual capacity. The case against Brumby in his official capacity will proceed to trial. A subsequent order will schedule a status conference to select a trial date.

**IT IS SO ORDERED.**

**SIGNED this 27th day of February, 2013.**

_____
Gregg Costa
United States District Judge