UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| ROBERT DE LA GARZA<br>Plaintiff, | §<br>§<br>§ | |
| VS. | §<br>§ | CA: 6:11-CV-00037 |
| KIRBY BRUMBY, Individually and<br>in His Official Capacity as Sheriff<br>of Goliad County, Texas<br>Defendant. | §<br>§<br>§<br>§<br>§ | |

### DEFENDANT KIRBY BRUMBY IN HIS OFFICIAL CAPACITY AS SHERIFF OF GOLIAD COUNTY, TEXAS' MOTION FOR RECONSIDERATION OF HIS MOTION FOR SUMMARY JUDGMENT BASED ON HIS *MT. HEALTHY* AFFIRMATIVE DEFENSE

TO THE HONORABLE UNITED STATES DISTRICT JUDGE OF SAID COURT:

NOW COMES Defendant Kirby Brumby in his Official Capacity as Sheriff of Goliad County, Texas (referred to hereinafter as "Sheriff Brumby") and files this Motion for Reconsideration of His Motion For Summary Judgment based on his *Mt. Healthy* Affirmative Defense and in support hereof would show unto the Court as follows:

### I.
### DOES A FACT ISSUE EXIST?

1. This Court found that a fact issue exists regarding the Sheriff Brumby's *Mt. Healthy* affirmative defense.

2. In finding that a fact issue existed, the Court placed great weight on the existence of direct evidence that Sheriff Brumby was motivated by Robert De la

Garza's (hereinafter referred to as "De la Garza") exercise of his protected right (political association) when making the employment decision. Dkt. Entry No. 31. Unquestionably, that direct evidence exists in the form of Mr. Mollicone's declaration. However, even in the face of direct evidence, the *Mt. Healthy* affirmative defense entitles Sheriff Brumby to a dismissal as a matter of law.

## II.
## ARGUMENT AND AUTHORITY

### A.  Motion for Reconsideration Standard

3.  This Court has discretion to reconsider a denial of a Motion for Summary Judgment. Fed.R.Civ.P. 54(b). *Lavespere v. Niagra Machine & Tool Works, Inc.* 910 F.2d 167, 185 (5th Cir. 1990); *Xerox Corp. v. Genmoora Corp.,* 888 F.2d 345, 356 (5th Cir. 1989). The Fifth Circuit has held that "because the denial of a motion for summary judgment is an interlocutory order, the trial court is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence on an intervening change in or clarification of the substantive law." *Lavespere,* 910 F.2d at 185. As the Court that will try this case if it cannot be decided as a matter of law, it has the unique ability to satisfy oneself that the prior ruling is correct and that valuable judicial and party resources will not be wasted on an unnecessary trial. *American Stone Diamond, Inc. v. Lloyds of London,* 934 F.Supp. 839 (S.D.Tex. 1996).

**B. Sheriff Brumby in His Official Capacity's Motion for Summary Judgment based on his *Mt. Healthy* Affirmative Defense Should be Granted**

4. This Motion for Reconsideration is based exclusively upon showing that Sheriff Brumby is entitled to summary judgment on his *Mt. Healthy* affirmative defense because:

    (1) Direct evidence that the exercise of a protected right was a substantial factor in the employment decision does not alone create a fact issue on a *Mt. Healthy* affirmative defense;

    (2) Sheriff Brumby has produced substantial uncontroverted summary judgment evidence that De la Garza would not be hired because of De la Garza's past conduct—exclusive of his political association; and

    (3) Under the Court's current Ruling, De la Garza's exercise of a protected right has placed him in a better position to gain employment.

**(i) According to the Supreme Court, Direct Evidence that the Exercise of a Protected Right was a Substantial Factor in the Employment Decision Does Not Alone Create a Fact Issue on a *Mt. Healthy* Affirmative Defense**

5. When determining whether Sheriff Brumby would have made the same employment decision even if De la Garza did not exercise his constitutionally protected right, the Court applies the *Mt. Healthy* burden-shifting analysis. *Mt. Healthy City School Dist. Bd. Of Educ. v. Doyle*, 429 U.S. 274 (1977); *North Mississippi Communications, Inc. v. Jones*, 951 F.2d 652 (5th Cir. 1992); *Beattie v. Madison Cnty. Sch. Dist.*, 254 F.3d 95, 605 (5th Cir. 2001); *Gerhart v. Hayes*, 217 F.3d 320, 322 (5th Cir. 2000); *Greenwich Citizens Committee, Inc. v. Counties of*

*Warren and Washington Industrial Development Agency*, 77 F.3d 26 (2nd Cir. 1996); *Doyle v. Mt. Healthy City School Dist. Bd. Of Educ.*, 670 F.29 59 (6th Cir. 1982). The Supreme Court, Second Circuit, Fifth Circuit, and Sixth Circuit have held the *Mt. Healthy* burden-shifting analysis is two-prong. Under the first prong, De la Garza has the burden to produce evidence that his exercise of a constitutionally protected right was a substantial or motivating factor in Sheriff Brumby's decision. *Id.* Once the first prong is satisfied by De la Garza, the burden shifts to Sheriff Brumby to show that he would have made the same employment decision even in the absence of the De la Garza's exercise of a constitutionally protected right. *Id.*

6. If Sheriff Brumby satisfies this burden, he is entitled to summary judgment dismissal, unless, De la Garza adequately controverts Sheriff Brumby's evidence of his non-political reasons for not hiring De la Garza. *Beattie*, 254 F.3d at 604 ("Beattie offers no evidence to refute these affidavits. Thus, the Board's independent reasons for her termination shield it from liability under *Mt. Healthy*."); *James v. City of Houston Texas*, 48 Fed.Appx. 916, *5 (5th Cir. 2002) ("The failure to report, standing alone, justifies dismissal regardless of the content of his speech. He fails to point to sufficient summary judgment [evidence] to create a fact question that his protected speech, independent of his failure to disclose the conflict of interest, led to his discharge."). It is clear that the issue of direct evidence of retaliatory motive in the employment decision is only applicable

4

in analyzing the first prong of the *Mt. Healthy* analysis. Here, the Court has determined that Mr. Mollicone's Declaration has presented direct evidence that a retaliatory motive was a substantial factor in Sheriff Brumby's decision—Sheriff Brumby, in this Motion, does not dispute the Court's finding in that regard.

7. With regard to the second prong, the Court has found that Sheriff Brumby has produced summary judgment evidence demonstrating that he had non-protected reasons to not hire De la Garza. Dkt. Entry No. 31. But the Court found that this merely raised a fact issue as to the second prong of the *Mt. Healthy* affirmative defense. Dkt. Entry No. 31. By holding under the facts in this case that a fact issue exists, the *Mt. Healthy* affirmative defense crafted by Justice Rehnquist is virtually eliminated. Under the current rationale of this Court, once the plaintiff produces one piece of direct evidence that a protected right was a substantial factor in the employment decision, the plaintiff is entitled to a jury trial. However, the *Mt. Healthy* affirmative defense permits a defendant to be dismissed as a matter of law even in the face of direct evidence that protected conduct was a substantial factor in the employment decision. *Mt. Healthy*, 429 U.S. 274; *Doyle*, 670 F.2d at 61; *Beattie*, 254 F.3d at 604; *James*, 48 Fed.Appx. 916. In fact, that is exactly what happened in *Mt. Healthy*. *Mt. Healthy*, 429 U.S. 274.

8. **In *Mt. Healthy* there was no dispute that an impermissible reason had at least partially caused the defendant's adverse state action.** *Mt. Healthy*, 429 U.S. 274; *Doyle*, 670 F.2d 59; *Greenwich Citizens Committee, Inc.*, 77 F.3d at 32.

5

In *Mt. Healthy*, Doyle, a teacher, was not rehired in part because he conveyed the new teacher dress code to a radio station—an exercise of his First Amendment right of free speech. *Mt. Healthy*, 429 U.S. at 282-83. When Doyle inquired into why he was not rehired, the Superintendent wrote,

> I. You (Doyle) have shown a notable lack of tact in handling professional matters which leaves much doubt as to your sincerity in establishing good school relationships.
>    A. You assumed the responsibility to notify W.S.A.I. Radio Station in regards to the suggestion of the Board of Education that teachers establish an appropriate dress code for professional people. This raised much concern not only within this community, but also in neighboring communities.
>    B. You used obscene gestures to correct students in a situation in the cafeteria causing considerable concern among those students present. "Sincerely yours, Rex Ralph 'Superintendent'"
>
> *Mt. Healthy*, 429 U.S. at 282-83.

The Superintendent's letter clearly indicates that Doyle was terminated in-part for notifying the radio station—an exercise of his protected First Amendment speech. The Supreme Court held that this was direct evidence of retaliation and played a substantial part in Doyle's termination:

> The District Court ... concluded that ... (the) telephone call to the radio station was "clearly protected by the First Amendment," and that ... it had played a "substantial part" in petitioner's (the Board) decision not to rehire respondent (Doyle). *Mt. Healthy*, 429 U.S. at 274.

The Supreme Court in *Mt. Healthy* was clearly presented with direct evidence of retaliation being a substantial factor in the adverse employment action and yet it still held that the employer could escape liability if it produced evidence that it would have reached the same decision even in the absence of the protected conduct of the employee. *Mt. Healthy*, 429 U.S. at 282-83. On remand, the District Court ruled that the two "non-political" reasons for the employment decision were

6

sufficient to grant a *Mt. Healthy* affirmative defense dismissal. *Doyle,* 670 F.2d at 61. When Doyle appealed, the Sixth Circuit held that "the Board has established by a preponderance of the evidence that Doyle would not have been renewed because of the incidents-exclusive of the radio incident-which had occurred during the year or so prior to the nonrenewal." *Id.* In *Mt. Healthy* there were only two non-protected incidents. Doyle used an obscene gesture to correct students in the cafeteria and another insolated instance referred to as the "s.o.b. name calling incident." *Mt. Healthy*, 429 U.S. at 282-283. Yet, Doyle was not terminated when either of these incidents occurred. *Id.*; *Doyle,* 670 F.2d at 61. Still, the 6th Circuit affirmed the granting of a *Mt. Healthy* dismissal. *Doyle,* 670 F.2d 59.

9. Here, this Court correctly stated that "[i]ndeed, none of the Fifth Circuit cases finding summary judgment proper on a *Mt. Healthy* defense involved the direct evidence De la Garza has." However, this is a distinction without a difference. *Mt. Healthy* does involve direct evidence in the form of a letter written by the decision maker.[1] Further, the Supreme Court in *Mt. Healthy* held that, even in the face of direct evidence, the employer is entitled to dismissal as a matter of law if he proves that he would have made the same decision notwithstanding the employee's protected conduct. *Mt. Healthy*, 429 U.S. at 282-83. The Supreme Court held,

> ... the District Court should have gone on to determine whether the Board had shown by a preponderance of the evidence that it would have reached the same decision as to

---

[1] This is even stronger direct evidence than Mr. Mollicone's declaration.

> respondent's reemployment even in the absence of the protected conduct. We cannot tell what result (the lower courts) ... would have reached had they applied this **TEST** (emphasis added). *Mt. Healthy*, 429 U.S. at 287.

Further, all three 5th Circuit cases upon which Sheriff Brumby relies upon in his summary judgment apply the same **"test"** described in *Mt. Healthy*. In each instance, the 5th Circuit assumed that the plaintiff had satisfied their burden under the first prong of the **"test"** and then found, without a jury trial, that the defendant had met its burden of showing it would have made the same decision anyway and was entitled to summary judgment. *Beattie*, 254 F.3d at 605; *Gerhart*, 217 F.3d 320; *James*, 48 Fed.Appx. 916.

10. Here, Sheriff Brumby, by uncontroverted evidence, has demonstrated that he would have made the same employment decision notwithstanding De la Garza's political association.

### (ii) Uncontroverted Summary Judgment Evidence That Sheriff Brumby Would <u>Not</u> Hire De la Garza Because of De la Garza's Past Conduct—Exclusive of His Political Association

11. The undisputed "non-political" reasons Sheriff Brumby produces in his summary judgment clearly provide a greater reason to not hire De la Garza than the facts in *Mt. Healthy, Beattie, Gerhart* or *James*. Sheriff Brumby knew that De la Garza, as Sheriff, took a federal inmate to his son's 5th birthday party in street clothes, allowed his jail administrator to take overnight social trips with an inmate, allowed inmates to be unsupervised outside of the jail late at night, allowed unlicensed inmates to drive County vehicles as a favor to his friend, allowed

children to play in the sally port area of the jail where inmates frequent, allowed a federal inmate to be a trustee and would not let Sheriff Brumby (as constable) get gas from the County tank until Commissioners Court ordered him to[2]. The majority of these events were confirmed to have occurred by De la Garza's own sworn deposition testimony on March 28, 2006, which Sheriff Brumby read in mid-2007—two years before Sheriff Brumby did not hire De la Garza. These events, compiled together, certainly provide stronger reasons for not hiring De la Garza than an employee on one occasion using an obscene gesture to correct students in the cafeteria and another isolated instance where an employee called another individual a s.o.b. Sheriff Brumby has clearly satisfied his burden under the second prong of the *Mt. Healthy* analysis in producing sufficient evidence of "other unprotected" reasons why he made the employment decision.

12. Since Sheriff Brumby has met his burden, De la Garza must produce significant, probative evidence demonstrating the existence of a triable dispute of fact that Sheriff Brumby's reasonings are false—i.e., he must controvert Sheriff Brumby's evidence, to survive summary judgment. *Kansas Reinsurance Co. v.*

---

[2] In the Court's Memorandum and Opinion, these were referred to as De la Garza's "shortcomings." These "shortcomings" include, but not limited to, his lacked honesty, trustworthiness, professionalism, loyalty, an ability to apply the laws fairly and equally to everybody, and the ability to exercise sound judgment. These characterizations were exemplified by De la Garza when he was Sheriff by taking a federal inmate to his son's 5th birthday party in street clothes, allowing his jail administrator to take over-night trips with an inmate, allowed inmates to be unsupervised outside of the jail late at night, allowed children to play in the sally port area of the jail where inmates frequent and allowed a federal inmate to be a trustee. All of these events were confirmed to have occurred by De la Garza's own sworn deposition testimony on March 28, 2006 which Sheriff Brumby read in mid-2007-two years before Sheriff Brumby did not hire De la Garza. Additionally, Sheriff Brumby did not believe that De la Garza would be capable of respecting his authority and would disrupt the running of the Sheriff's Office. De la Garza did not like or trust Sheriff Brumby. All of these facts are before the Court in this Motion for Summary Judgment and are uncontroverted. (*See* Brumby Affidavit, Brumby deposition, De la Garza deposition)

*Congressional Mortg. Corp.*, 20 F.3d 1362, 1371 (5th Cir. 1994); *Beattie*, 254 F.3d at 604 ("Beattie offers no evidence to refute these affidavits. Thus, the Board's independent reasons for her termination shield it from liability under *Mt. Healthy*."); *James v. City of Houston Texas*, 48 Fed.Appx. 916, *5 (5th Cir. 2002) ("The failure to report, standing alone, justifies dismissal regardless of the content of his speech. He fails to point to sufficient summary judgment [evidence] to create a fact question that his protected speech, independent of his failure to disclose the conflict of interest, led to his discharge.").

13. Here, De la Garza has failed to produce any evidence which controverts Sheriff Brumby's evidence that he would not have hired an employee who he knew had the same "shortcomings" as De la Garza. The only evidence De la Garza has produced to the Court in the summary judgment stage is Mr. Mollicone's declaration. Dkt. Entry No. 26-1 at 24. While this satisfies the first prong of the *Mt. Healthy* "test", it falls drastically short of controverting any of Sheriff Brumby's reasons that he would have made the same employment decision notwithstanding De la Garza's political association. Even **Mr. Mollicone's declaration states that other matters were discussed**—"there were other matters Sheriff Brumby and I talked about in that conversation, and so this declaration does not report all that we talked about". Dkt. Entry No. 26, Ex. 4. The summary judgment evidence proves what else "we talked about"—the many reasons why he

could not hire De la Garza, **which had nothing to do with De la Garza's political association.**

14. In Sheriff Brumby's deposition, he testifies:

Q: Okay. Do you remember having a conversation with Mr. Mollicone regarding Mr. de la Garza's candidacy as a school resource officer?
A: Yes.
Q: All right. And does it differ from Mr. Mollicone's account, your memory of the conversation?
A: I talked to Mr. Mollicone probably for 20 or 25 minutes. I told him that I did not want to commission and deputize Robert de la Garza as the SRO because of his statements in the sworn deposition that Robert de la Garza gave in a previous federal lawsuit. I asked Richard Mollicone, "Have you read the deposition?"
    And he told me "No".
    And I told him, "I have a copy. I will deliver it to you so you can read it."
    He said, "I'm not going to read it," and we discussed some of the issues that Mr. de la Garza had done.
    And I asked him a second time, "Let me bring you the sworn deposition that Robert de la Garza gave in the —"I think I probably called it the rape case. "Let me bring that over to your house and give you a copy and let you read it."
Q: That was the Celia Sanchez case?
A: Correct.
Q: Okay.
A: And he said he would not read it. I began to tell him some more things about what Robert de la Garza had sworn in the deposition, and Mr. Mollicone was not at all interested in hearing any of that information.
    I told him that he had taken a federal inmate to his son's five-year-old birthday party. I told him that he allowed the federal inmate, which was against the federal contract that they had with the Feds, to do all sorts of things.
    He allowed his jail administrator to take an inmate on an overnight, and I said, "Let me bring you the sworn deposition." I talked to him, like I said, 20, 25 minutes, and I will tell you that I was probably a little frustrated with him, and I can't say on No. 5 here. I may have under frustration may have said something similar. I can't swear that I said that or I didn't say that.
Dkt. Entry No. 30, Exhibit "A" *Sheriff Brumby Deposition Transcript* page 219, line 12 – page 221, line 4.

15. As can be seen in the summary judgment evidence, Sheriff Brumby even gave Mr. Mollicone other "non-political" reasons for not hiring De la Garza. Many of those reasons are contained in De la Garza's own sworn deposition he gave on March 28, 2006. Reasons which De la Garza has not refuted.

## De la Garza's Burden Under the Second Prong

16. In order to create a "disputed fact issue" for the jury, the plaintiff must controvert the defendant's evidence. *Kansas Reinsurance Co.,* 20 F.3d at 1371; *Beattie,* 254 F.3d at 605; *James,* 48 Fed.Appx. 916. De la Garza, in his Response to Sheriff Brumby's Motion for Summary Judgment, did not offer any evidence which controverted the "other" reasons Sheriff Brumby has provided. De la Garza could have provided affidavits stating that he did not take a federal inmate in his custody in plain clothes to a 5 year old child's birthday party. He could have provided an affidavit that he didn't authorize unlicensed inmates to drive Goliad County dump trucks. Or that the letter on Goliad County Sheriff's Office letterhead denying Brumby access to the county gas pump was a forgery. Or that he didn't allow inmates to go on overnight social trips with the jail captain. Or that he didn't berate the former SRO Joseph Stephens, who arrested the child of one of De la Garza's friends. Or that he did trust Sheriff Brumby and respect his authority. Or that Brumby did not provide Mollicone numerous "unprotected reasons" for not hiring De la Garza. Or he could have pointed to other employees Sheriff Brumby hired whose "shortcomings" were comparable to De la Garza. That is how a plaintiff controverts or calls into question whether the proffered non-protected motivations were genuine or pretextual.

17. De la Garza has not produced significant, probative evidence demonstrating the existence of a triable dispute of fact that Sheriff Brumby's reasonings are false.

*Kansas Reinsurance Co.*, 20 F.3d at 1371; *Beattie*, 254 F.3d at 605; *James*, 48 Fed.Appx. 916. As such, Sheriff Brumby is entitled to summary judgment dismissal on his *Mt. Healthy* affirmative defense.

### (iii) De la Garza's Exercise of Constitutionally Protected Right Cannot Place Him in a Better Position to Gain Employment.

18.  The Supreme Court's rationale behind the *Mt. Healthy* affirmative defense is to assure that an employee who exercises a protected right is not placed in a better position to gain employment then a similarly situated employee who does not exercise a protected right. *Mt. Healthy*, 429 U.S. at 286.

> The Supreme Court has stated:
>
> [a] rule of causation which focuses solely on whether protected conduct played a part, "substantial" or otherwise, in a decision not to rehire, could place an employee in a better position as a result of the exercise of constitutionally protected rights than he would have occupied had he done nothing. *Mt. Healthy*, 429 U.S. at 285
>
> A borderline or marginal candidate should not have the employment question resolved against him because of constitutionally protected conduct. But that same candidate ought not to be able, by engaging in such conduct, to prevent his employer from assessing his performance record and reaching a decision not to rehire on the basis of that record simply because the protected conduct makes the employer more certain of the correctness of its decision. *Mt. Healthy*, 429 U.S. at 286.

19.  Here, the summary judgment evidence clearly proves that Sheriff Brumby would not hire a candidate that did the things that De la Garza admitted in his own deposition that he did: take a federal inmate to his son's 5th birthday party in street clothes, allow his jail administrator to take overnight social trips with an inmate, allow inmates to be unsupervised outside of the jail late at night, allow children to

play in the sally port area of the jail where inmates frequent, allow a federal inmate to be a trustee, etc.

20. De la Garza did not produce any evidence that proved Sheriff Brumby would hire an employee with De la Garza's "shortcomings". Nor did he refute that these events occurred. As such, no fact issue exists as to whether Sheriff Brumby would hire an employee with De la Garza's "shortcomings". The <u>only</u> summary judgment evidence that addresses this issue clearly proves that Sheriff Brumby would not hire such an employee.

21. The Court's Memorandum and Opinion that a fact issue exists as to whether Sheriff Brumby would have hired De la Garza in the absence of his political association creates a situation where De la Garza is in a better position to gain employment because of his political association than he would be otherwise. This is the exact situation the Supreme Court sought to prevent in its holding in *Mt. Healthy*. The Second Circuit, Fifth Circuit and Sixth Circuit have all echoed this exact rationale in subsequent cases.

WHEREFORE PREMISES CONSIDERED, Defendant Sheriff Brumby, in his Official Capacity as Sheriff of Goliad County, Texas, prays that the Court Grant his Motion for Reconsideration and, after hearing the same, Grant Sheriff Brumby in his Official Capacity's Motion for Summary Judgment based on his *Mt. Healthy* Affirmative Defense and for such other and further relief to which Defendant may show himself justly entitled.

Respectfully submitted,

CULLEN, CARSNER, SEERDEN & CULLEN, L.L.P.
119 South Main Street (77901)
Post Office Box 2938
Victoria, Texas 77902-2938
(361) 573-6318; (361) 573-2603 Fax

By:/s/ Kevin D. Cullen
    Kevin D. Cullen
    Federal ID No. 957
    Casey T. Cullen
    Federal ID No. 1130427
**ATTORNEYS FOR DEFENDANT**

## CERTIFICATE OF SERVICE

I do hereby certify that a true and correct copy of the above and foregoing pleading has been served on all counsel of record on this the 14th day of March, 2013 via ECF electronic notice upon counsel of record herein in compliance with Rule 5 of the Federal Rules of Civil Procedure and paragraph 9 of the Southern District of Texas's Administrative Procedures for Electronic Filing in Civil and Criminal Cases by notice of Electronic Filing in accordance with the Federal Rules of Civil Procedure.

                                              /s/ Kevin D. Cullen
                                              Kevin D. Cullen